UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

CIVIL ACTION NO. 07-122-DLB

KENNETH KENNEDY                                                              PLAINTIFF

vs.                    MEMORANDUM OPINION AND ORDER

CITY OF VILLA HILLS, ET AL.                                 DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case is presently before the Court on Defendants' Motion to Dismiss (Doc. #2), which motion is ripe for consideration. For the reasons that follow, Defendants' motion will be **DENIED** as to Plaintiff's § 1983 claims and **DENIED** as to Plaintiff's state-law claims, with the exception of his claim for libel and slander.

### I. Background

This civil action arises from Plaintiff Kenneth Kennedy's arrest for disorderly conduct by Defendant Joseph Schutzman while Kennedy was at the Villa Hills City Building on May 18, 2005. While those criminal charges were pending, Kennedy filed a civil suit against the City of Villa Hills and Schutzman, in his individual and official capacities, on May 8, 2006, in the Kenton Circuit Court.[1] That case was removed to this Court pursuant to 28 U.S.C. § 1441, on the basis that Plaintiff's civil rights claims provided federal question jurisdiction under 28 U.S.C. § 1331. *See Kennedy v. City of Villa Hills, et al.,* Cov. Case No. 06-cv-112. Defendants then moved to dismiss Plaintiff's cause of action as premature, in light of the pending criminal prosecution. Defendants' motion was granted by

---

[1]That Complaint alleged that Schutzman is the Zoning Administrator/Building Code Enforcement Officer/Building Inspector for the City of Villa Hills, as well as its City Police Detective.

Memorandum Order of October 16, 2006, with Plaintiff's Complaint being dismissed without prejudice. *See Id.* (Doc. #8).

The disorderly conduct charge against Plaintiff was dismissed by the state district court judge on June 19, 2007, after Defendants refused to certify to the Kentucky Attorney General the issue of whether a city police detective can be employed as both a police officer and as a city building inspector. The criminal proceedings having concluded, Kennedy filed a new complaint on July 6, 2007, again in the Kenton Circuit Court. But for the update in procedural history via newly-added paragraph 13, the content of this second filing is a mirror image of the first. And as was done with the first action, Defendants removed the case pursuant to 28 U.S.C. § 1441, based upon federal question jurisdiction under 28 U.S.C. § 1331.[2] Defendants once again move to dismiss, this time arguing that Plaintiff's claims are now time-barred.

---

[2]Both Complaints assert various imprecise claims under four "Cause of Action" headings. The first two causes of action allege federal claims. First Cause of Action – a § 1983 claim against the City of Villa Hills for failure to properly train and supervise its police officers and formulate adequate policies to prevent unlawful harassment, false arrest, and false imprisonment in violation of Plaintiff's civil rights and his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution and Kentucky Constitution. Second Cause of Action – a § 1983 claim against Defendant Schutzman, and other Unknown Defendants, for conspiring to harass and intimidate Plaintiff, thereby depriving him of his constitutional rights by threats of physical arrest, false imprisonment, force and retaliation.

The last two causes of action assert state-law claims. Third Cause of Action – claims against the City and Schutzman for "falsely and maliciously prosecuting and imprisoning him and charging him with a misdemeanor crime and other offenses, which was an intentional infliction of emotional distress, without proper investigation and without regard to the truth of the situation and the facts as known to all defendants," to punish and retaliate against Plaintiff for prior complaints and inquiries he had presented to the City in conjunction with zoning matters. Fourth Cause of Action – claims against the City and Schutzman for "libeling and slandering him by giving and swearing to false testimony" that Plaintiff was a disorderly person, and thereby abusing process, again to punish and retaliate against him for his prior complaints and inquiries.

## II. Analysis

### A. *Prior Dismissal of Kennedy's Claims as Premature*

This Court, on motion of Defendants, dismissed Plaintiff's initial Complaint filed in May of 2006. The Court concluded that dismissal of Plaintiff's § 1983 constitutional tort claims for monetary damages pending prosecution of Kennedy on the underlying criminal charges upon which the federal civil claims were based was compelled by *Heck v. Humphrey*, 512 U.S. 477 (1994).

Petitioner in *Heck* was convicted of manslaughter. While his direct appeal of his criminal conviction was pending, he filed a civil complaint alleging a § 1983 claim of malicious prosecution based upon the acts and omissions of the investigator and prosecutors involved in his criminal conviction. The Supreme Court expressed concern about criminal defendants using civil rights suits for monetary damages as a means to collaterally attack their criminal judgments. The Court set certain conditions that limit pursuit of § 1983 claims to situations where proof of the civil claim will not impact or disturb the criminal judgment, or the criminal judgment has already been reversed or vacated.

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, [ ] a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, **the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any**

> **outstanding criminal judgment against the plaintiff, the action should be allowed to proceed,**[ ] in the absence of some other bar to the suit.[ ]

Id. at 487 (emphasis added) (footnotes omitted).[3]

The § 1983 filing in *Heck* is procedurally distinguishable from Kennedy's first § 1983 filing. In *Heck* the civil suit was presented post-conviction, with appeal pending. Kennedy's initial Complaint here was filed while the disorderly conduct charges were still pending against him. Nevertheless, and as Defendants expressly argued in that earlier dismissal motion, the Sixth Circuit had adopted the *Heck* rationale and extended it to the pre-conviction context in *Shamaeizadeh v. Cunigan*, 182 F.3d 391 (6th Cir. 1999), wherein the Sixth Circuit concluded that it would not have been possible to rule on plaintiff's § 1983 claim for illegal search in violation of the Fourth Amendment without deciding issues common to, and thereby infringing upon, the pending criminal action, such as the legality of the searches. *Id.* at 398.[4] Since applying the *Heck* bar pre-conviction meant Shamaeizadeh could not bring his § 1983 claim until the criminal charges against him

---

[3] The Court's holding in *Heck,* that a civil complaint based on underlying criminal proceedings must be dismissed if a judgment in favor of the plaintiff would imply the invalidity of his conviction, is commonly referred to by courts as "the *Heck* bar."

[4] In so concluding, the Sixth Circuit looked to the Third Circuit's reasoning in *Smith v. Holtz*, 87 F.3d 108 (3d Cir. 1996):

> We find that these concerns [from *Heck*] apply equally to claims that, if successful, would necessarily imply the invalidity of a future conviction on a pending criminal charge. A claim by a defendant in an ongoing criminal prosecution which necessarily challenges the legality of a future conviction on a pending criminal charge lies at the intersection of the federal habeas corpus statute and the Civil Rights Act of 1871. If such a claim could proceed while criminal proceedings are ongoing, there would be a potential for inconsistent determinations in the civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. In terms of the conflicts which *Heck* sought to avoid, there is no difference between a conviction which is outstanding at the time the civil rights action is instituted and a potential conviction on a pending charge that may be entered at some point thereafter.

*Shamaeizadeh,* 182 F.3d at 397-98 (quoting *Smith,* 87 F.3d at 113 n.5).

concluded (they were ultimately dismissed), the Sixth Circuit held that "the proper starting point for the running of the statute of limitations is the date of the dismissal of the criminal charges." *Shamaeizadeh,* 182 F.3d at 399.

In ruling on Kennedy's original complaint removed here in 2006, this Court determined that, although his § 1983 claims as asserted were not a model of clarity, Defendants persuasively argued that each of those claims regardless of the label turned upon the issue of the legitimacy of Kennedy's arrest for disorderly conduct.[5] The Court determined that "[a]ccording to the scope of the claims as set forth by Plaintiff, the resolution of the disorderly conduct charge in state court is effectively a threshold condition for the legitimate survival of Plaintiff's [federal] civil claims based thereon." *Kennedy v. City of Villa Hills, et al.,* Cov. Case No. 06-cv-112 (Doc. #8, at p. 4). Therefore, this Court dismissed Plaintiff's claims without prejudice pursuant to *Heck* and *Shamaeizadeh,* indicating Plaintiff would have the opportunity to refile the alleged constitutional violations assuming a favorable outcome in his criminal proceedings.[6]

---

[5]Plaintiff asserts both federal and state claims, but this discussion is directed to the federal claims only. The state law claims are addressed separately in this opinion.

[6]Plaintiff noted his concern about the possibility of a future statute of limitations challenge if he refiled his claims upon conclusion of the criminal proceedings. The Court pointed out that, pursuant to *Shamaeizadeh*, Plaintiff's federal causes of action accrue, if at all, only upon termination of those state criminal charges in his favor. His causes of action otherwise do not exist, and the statute of limitations does not begin to run, until such time. *See Kennedy v. City of Villa Hills, et al.,* Cov. Case No. 06-cv-122 (Doc. #8, at n.6 & accompanying text).
While this holding in *Shamaeizadeh* concerning when the statute of limitations begins to run was derived in part from an expansion of *Heck,* the Supreme Court in *Heck* expressly noted that the statute of limitations was not at issue because there is "no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck,* 512 U.S. at 489. Commonly referred to as deferred accrual, the Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.*

### B.     *Current Requested Dismissal of Kennedy's Claims as Untimely*

Although Defendants previously asserted Plaintiff's claims were premature, they now denounce them as untimely based upon the Supreme Court's "reversed course," in *Wallace v. Kato*, 127 S. Ct. 1091 (2007), a decision issued after to the prior dismissal of Kennedy's claims.  In *Wallace*, the Supreme Court held that "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law," *id.* at 1095, and "[t]he statute of limitations upon a § 1983 claim seeking damages for a false arrest[7] in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process," *id.* at 1100.

*Wallace* explains that, in a pre-conviction setting, the statute of limitations on § 1983 claims begins to run not necessarily when the underlying criminal proceedings conclude, but could begin at an earlier time depending upon the accrual point of the cause of action for that type of constitutional tort.  *Id.* at 1095-96.  The particular constitutional tort being sued upon in *Wallace*, false arrest/imprisonment, could be brought "as soon as the allegedly wrongful arrest occurred, subjecting [petitioner] to the harm of involuntary detention," but for a common law distinction in false imprisonment cases that the limitations period runs when the alleged false imprisonment ends.  *Id.* at 1095-96.

Defendants' analysis of why Plaintiff's federal claims are now barred under *Wallace* is straightforward.  (*See* Doc. #2, at p. 9) Because Plaintiff's suit seeks damages "for alleged conduct that resulted in his arrest and criminal proceedings being brought against

---

[7]In *Wallace*, petitioner was arrested and convicted of murder in January 1994, but the charges were ultimately dropped in April 2002.  Thereafter, petitioner filed claims for both false arrest and false imprisonment, but the Court analyzed them together as false imprisonment.

him on May 18, 2005," they infer Plaintiff's suit is one for wrongful arrest that, under *Wallace* and the Sixth Circuit's application of *Wallace* in *Fox v. DeSoto,* 489 F.3d 227 (6th Cir. 2007),[8] Plaintiff was required to file suit within one year of his arrest,[9] therefore time-barring his § 1983 Eighth and Fourteenth Amendment claims refiled on July 6, 2007.

Defendants' argument relies on packaging Plaintiff's federal claims into a "wrongful arrest" box so that Defendants can claim the time clock began ticking back at the time of arrest. The reality is that Plaintiff's claims have been poorly identified and pled. The prior dismissal order noted that the precise nature of the § 1983 claims and the amendments those claims stood upon simply were not clear. Defendants never moved in either case for a more definite statement of Plaintiff's claims or to dismiss the claims for failure to adequately state a claim against them.

In this case, it would be unjust to hold Plaintiff's feet to the fire of a federal constitutional "wrongful arrest" claim with its companion running date for filing. The Court's prior dismissal order noted the "conspicuous absence of any Fourth Amendment claim" in Plaintiff's Complaint, *see* Case No. 06-cv-112 (Doc. #8, p. 4), yet curiously Plaintiff relied upon an exception to *Heck* in the context of Fourth Amendment claims in fighting that prior dismissal motion. In other words, the nature and scope of Plaintiff's federal claims is anything but obvious, "wrongful arrest" or otherwise.

---

[8] In *Fox,* the Sixth Circuit held that § 1983 claims for false arrest "accrue at the time of the arrest or, at the latest, when detention without legal process ends." *Fox,* 489 F.3d at 233.

[9] It is well-settled that § 1983 claims are governed by Kentucky's personal injury statute of limitations. "We conclude that section 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a)." *Collard v. Kentucky Bd. of Nursing,* 896 F.2d 179, 182 (6th Cir. 1990); *see also Dixon v. Clem,* 492 F.3d 665, 671 (6th Cir. 2007).

Perhaps Defendants did not protest the inartfully worded Complaint in their first motion to dismiss because it was not necessary to separate out each specific § 1983 claim in order to consider whether the *Heck* bar applied. Whatever the labels on Plaintiff's § 1983 claims, they all implied the invalidity of the disorderly conduct arrest and detainment, thus requiring dismissal under *Heck* pursuant to the Sixth Circuit's extension of the *Heck* bar in the pre-conviction context via *Shamaeizadeh*.[10] But with the Supreme Court's clarification in *Wallace* that the required dismissal and deferred accrual occasioned by *Heck* do not apply in the pre-conviction setting, identifying in precise terms each constitutional tort being asserted by a civil rights plaintiff becomes critical in determining the accrual date for each § 1983 claim.

In sum, the Supreme Court has not reversed course as Defendants suggest; *Wallace* does not overturn or alter *Heck's* holding. Rather, it expounds upon the proper application of the *Heck* bar.

> [T]he *Heck* rule for deferred accrual is called into play only when there exists "a conviction or sentence that has *not* been ... invalidated," that is to say, an "outstanding criminal judgment." It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn. We assume that, for purposes of the present tort action, the *Heck* principle would be applied not to the date of accrual but to the date on which the statute of limitations began to run, that is, the date petitioner became held pursuant to legal process. Even at that later time, there was in existence no criminal conviction that the cause of action would impugn; indeed, there may not even have been an indictment.

---

[10]The Sixth Circuit applied *Heck's* bar to filing § 1983 claims to the pre-conviction setting, reasoning the criminal defendant's focus should not be misdirected to raising potential § 1983 claims within one year of an alleged constitutional violation, but instead focused on mounting a viable defense to the pending criminal charges. And since, if a conviction did occur, the claims would have to be dismissed without prejudice under *Heck* as having not yet accrued, it made sense to allow criminal defendants to wait until pending criminal proceedings had concluded to timely file claims, as was done convicted defendants. *Shamaeizadeh,* 182 F.3d at 399.

*Wallace,* 127 S. Ct. at 1098 (emphasis in original). However, the Court's clarification in *Wallace* about *Heck's* application in pre-conviction settings did effectively reverse the course being charted by the Sixth Circuit in *Shamaeizadeh* and cases relying upon it. The Supreme Court in *Wallace* declined to adopt petitioner's argument that pursuant to *Heck*, the statute of limitations for his alleged § 1983 claim should not have accrued until the day his criminal charges were dismissed. *Id.* at 1097-98. Instead, the Court held that *Heck* did not create a blanket rule that all § 1983 claims are not cognizable until dismissal or resolution of criminal charges, determining the statute of limitations for petitioner's false imprisonment claim began to run when he first appeared before the Court and was bound over for trial. *Id.* at 1097.

> What petitioner seeks, in other words, is the adoption of a principle that goes well beyond *Heck*; that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside. The impracticality of such a rule should be obvious. In an action for false arrest it would require the plaintiff (and if he brings suit promptly, the court) to speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the pending civil action will impugn that verdict, see *Heck,* 512 U.S., at 487, n.7, 114 S. Ct. 2364 – all this at a time when it can hardly be known what evidence the prosecution has in its possession. And what if the plaintiff (or the court) guesses wrong, and the anticipated future conviction never occurs, because of acquittal or dismissal? Does that event (instead of the *Heck*-required setting aside of the extant conviction) trigger accrual of the cause of action? Or what if prosecution never occurs – what will the trigger be then?
>
> We are not disposed to embrace this bizarre extension of *Heck.* If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. See *id.* [citing *Heck,* 512 U.S.] at 478-88, n.8, 114 S. Ct. 2364 (noting that "abstention may be an appropriate response to the parallel state-court proceedings"); . . . . If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Id.* at 1098 (internal citations omitted).

The Sixth Circuit has recognized that "[i]n no uncertain terms, however, the Court in *Wallace* clarified that the *Heck* bar has no application in the pre-conviction context." *Fox,* 489 F.3d at 234.  To the extent the Sixth Circuit in *Shamaeizadeh* concluded otherwise, that decision has been abrogated.  *See Fox,* 489 F.3d at 233; *Edison v. Tenn. Dep't of Children's Servs.,* 510 F.3d 631, 639 (6th Cir. 2007).  *Wallace* now requires that where "plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."  *Id.* at 1098.  Thus, *Wallace* still stands for the principle that courts should refrain from considering alleged § 1983 claims where there are pending or potential state criminal proceedings and resolution of the constitutional tort claims would impugn the integrity of a possible future criminal conviction.  The difference, post-*Wallace* versus pre-*Wallace*, is that now the proper procedure is to stay the action rather than dismiss the claims without prejudice pursuant to *Heck,* which is what this Court did in Kennedy's prior action.

In light of the Supreme Court's decision in *Wallace,* this Court's previous dismissal of Plaintiff's Complaint without prejudice pursuant to *Heck* and *Shamaeizadeh* may[11] now present statute of limitations problems for Plaintiff that this Court in its prior order stated would not occur.  Yet, there is a critical difference between the case now before this Court

---

[11] While it is undisputed that a one-year statute of limitations applies to each of those claims, determining when the claim accrued for purposes of when the limitations period begins depends on the claim.  And, as discussed above, the specific federal claims and amendments relied upon therefor could hardly be described as being clearly stated in Plaintiff's Complaint.  Nevertheless, given the July 6, 2007, refiling date, any claim accruing other than upon dismissal of the criminal charges would likely be time-barred.

and the decisions of *Wallace* and *Fox.* In *Wallace* and *Fox,* the plaintiffs did not file their civil complaint in the first instance until after their criminal charges had been dismissed or overturned. Plaintiff here did file his initial Complaint while his disorderly conduct charge was still pending.

The Court is not inclined to unilaterally punish Kennedy for circumstances not of his own making. The Court ordered Kennedy's claims dismissed as premature based on then binding precedent. Plaintiff relied upon the Court's directive of when his claims would accrue, and that reliance was not misplaced. Under these circumstances, application of equitable principles is appropriate and has been similarly recognized where a party relied to its detriment upon a court's order. *See Carlile v. South Routt Sch. District RE 3-J,* 652 F.2d 981, 986 (10th Cir. 1981) (court's order upon which plaintiff reasonably relied led her to believe she had done everything required of her to timely commence suit). To hold otherwise would unfairly prejudice the Plaintiff in this case.[12]

Moreover, the *Wallace* decision also reveals that the Supreme Court considered the possibility of a factual situation similar to that before this Court, noting the potential harm to a plaintiff that could result.

> Had petitioner filed suit upon his arrest and had his suit then been dismissed under *Heck,* the statute of limitations, absent tolling, would have run by the time he obtained reversal of his conviction. If under those circumstances he were not allowed to refile his suit, *Heck* would produce immunity from § 1983 liability, a result surely not intended. Because in the present case petitioner did not file his suit within the limitations period, we need not decide, had he

---

[12]Although Defendants may perceive they are being prejudiced by not receiving the benefit of this Circuit change in pre-conviction processing of § 1983 claims, they never contemplated Plaintiff's claims would be dismissed *with prejudice* when the first suit was filed. The only difference now is that the claims would have been stayed, rather than dismissed. The Court does not view it as a *prejudice* not to bestow upon Defendants the *windfall* of complete dismissal, occasioned solely by the timing of Plaintiff's suits.

> done so, how much time he would have had to refile the suit once the *Heck* bar was removed.

*Wallace*, 127 S.Ct. at 1099 n. 4. Holding that Plaintiff's claims herein are now time-barred post-*Wallace* by the applicable statutes of limitation would result in *Heck* ultimately producing immunity for the Defendants, a scenario the Supreme Court deemed unacceptable.

At least a few lower courts have also been faced with similar quagmires. In *Kucharski v. Leveille*, 526 F. Supp. 2d 768 (E.D. Mich. 2007) the court highlighted this note in *Wallace* as support for its conclusion that plaintiff's claims should not be time-barred despite being filed outside the statute of limitations.[13] The *Kucharski* court also looked to equitable tolling in saving plaintiff's claims from a strict application of *Wallace*. On the other hand, in *Sandles v. U.S. Marshal's Service*, No. 04-72426, 2007 WL 4374080 (E.D. Mich. Oct. 18, 2007) (unpublished decision), the court declined to apply *Wallace's* footnote 4 exception because the plaintiff had waited ten months after his criminal conviction was reversed before filing his claims. More importantly, these two cases signify *Wallace* considered the possibility that strict application of its holding might produce § 1983 immunity when civil claims with associated criminal proceedings were filed and then dismissed pursuant to *Heck*, "a result surely not intended." *Wallace*, 127 S. Ct. at 1099 n.4.

The facts of this case are just as compelling to apply equitable tolling as those in *Kucharski*. In considering equitable tolling, the court examines "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the

---

[13]It should be noted that the court in *Kucharski* allowed the plaintiff's claims even though they were not filed until after resolution of the criminal matter. The court held plaintiff's late filing was a result of confusion created by the courts as to when the statute of limitations began to run. *Id.*

filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Ajazi v. Gonzales,* 216 Fed. Appx. 515, 518 (6th Cir. 2007). Plaintiff here diligently pursued his rights as evidenced by his first filing. Given the Court's Memorandum Order dismissing his claims and instructing him to refile upon resolution of the criminal proceedings, there was no reason for him to know of any other filing requirement, and there is no true prejudice to Defendants as previously noted herein. Accordingly, for these and all of the other reasons previously discussed herein, the Court finds that Plaintiff's second filing is deemed timely and assertion of his federal claims is not otherwise time-barred.

    **C.**    ***State-Law Claims***

Plaintiff's first suit also asserted a number of state-law claims. After the federal claims were dismissed without prejudice, continuing supplemental jurisdiction over the state-law claims was declined and those claims were therefore also dismissed pursuant to 28 U.S.C. § 1367(c)(3).

Plaintiff's second filing includes reassertion of these state-law claims. Of those claims purportedly asserted by Kennedy,[14] Defendants seek dismissal of only the false arrest/imprisonment and libel/slander claims as being time-barred. According to Defendants, Kentucky has a one-year statute of limitations for both of these claims, which one-year period has long since expired. Plaintiff has not responded to Defendants' arguments on these state-law claims.

---

[14]According to the Complaint, the state-law claims being asserted appear to be for false arrest/imprisonment, intentional infliction of emotional distress, malicious prosecution, retaliation, defamation (libel and slander), and abuse of process.

A one-year period of limitations applies to claims for false arrest/imprisonment in Kentucky. K.R.S. § 413.140(1)(a), (c). The cause of action accrues and the one-year period begins to run when the false imprisonment ends, which the Kentucky courts define as occurring when the defendant becomes held pursuant to legal process, such as being bound over by a magistrate or arraigned on charges. *See Dunn v. Felty,* 226 S.W.3d 68, 72 (Ky. 2007).

In this case, Plaintiff was arrested for disorderly conduct and taken to the Kenton County Detention Center on May 18, 2005. Applying the holding of *Dunn,* Defendants submit the allegedly false imprisonment of Plaintiff also ended on May 18, 2005, when he was released on bond from the detention center, yet Plaintiff did not refile his lawsuit until over two years later, on July 6, 2007.[15] The Court does not agree with Defendants' characterization of when the false imprisonment ended. In *Dunn,* the defendant was released on bail the same evening as his arrest, then arraigned the following day. His false imprisonment was deemed to have ended "when he became held pursuant to legal process," meaning the date he was arraigned on the charges, *see Dunn,* 226 S.W.3d at 72, not the day prior when he was released on bail.

It may well be that the applicable period of limitations for Plaintiff's false imprisonment claim expired prior to Plaintiff's July 6, 2007, second filing of his lawsuit. But with the record lacking evidence of when Plaintiff became held pursuant to legal process, thereby ending his false imprisonment and also starting the time clock from which the

---

[15]As previously noted, this second filing was, however, made less than a month after the June 19, 2007, dismissal date of the criminal charges filed against him in conjunction with his May 18, 2005, arrest.

statute of limitations ran, the Court cannot conclude that Kennedy's false imprisonment claim is time-barred.

Defendants also seek dismissal of Plaintiff's libel and slander claim as untimely. Kentucky law requires such defamation claims be filed within one year of when the cause of action accrues. *See* K.R.S. § 413.140(1)(d). Generally "it is the publication of the alleged libelous matter that causes the defamation or injury thus commencing the running of the one year statute of limitations provided by KRS 413.140(1)(d)." *Caslin v. Gen. Elec. Co.,* 608 S.W.2d 69, 70 (Ky. Ct. App. 1980).

Defendants point to the statements offered in conjunction with the May 18, 2005, filing of criminal charges as being the purportedly defamatory statements upon which Kennedy sues. Plaintiff neither disputes this interpretation of the vague allegations in his Complaint, nor offers evidence of any other or additional statements as forming the basis of this claim. Starting the one-year time clock from this date reveals that Plaintiff had until May 18, 2006, within which to timely file a claim for libel and slander.

Plaintiff's first lawsuit was filed in state court on May 8, 2006, and included a claim for libel and slander. The claim was asserted in a timely fashion in that prior action. However, when this Court on October 16, 2006, dismissed Plaintiff's federal claims without prejudice as having not yet accrued, *see Kennedy v. City of Villa Hills, Kentucky, et al.,* Covington Case No. 06-112 (Doc. #8, at p. 5), it also declined to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismissed them pursuant to 28 U.S.C. § 1367(c)(3), *(see id.* at p. 7). Plaintiff could have refiled his libel and slander claim in the Kenton Circuit Court within 90 days of that October 16, 2006, Order pursuant to K.R.S. § 413.270, Kentucky's "saving statute." Apparently, he did not do so and instead waited

until the conclusion of the criminal proceedings and the July 6, 2007, refiling of his § 1983 claims to reassert his state-law claims. However, this July 6, 2007, refiling date for his libel and slander claim is untimely, and Defendants' request to dismiss this claim on this basis will be granted.

### III. Conclusion

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendants' Motion to Dismiss (Doc. #2) is hereby **denied in part** and **granted in part** as follows:

    (a) Defendants' request to dismiss Plaintiff's § 1983 claims is hereby **denied;**

    (b) Defendants' request to dismiss Plaintiff's state-law claim for false imprisonment is hereby **denied;** and,

    (c) Defendants' request to dismiss Plaintiff's state-law claim for libel and slander is hereby **granted.**

(2) Defendants shall file their Answer to the remainder of Plaintiff's Complaint within **twenty (20) days** from the date of this Order.

This 6TH day of March, 2008.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\2-07-122-MOO.wpd