UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

CIVIL ACTION NO. 07-122-DLB

KENNETH KENNEDY                                                                    PLAINTIFF

vs.                              MEMORANDUM OPINION AND ORDER

CITY OF VILLA HILLS, ET AL.                                              DEFENDANTS

*   *   *   *   *   *   *

Plaintiff Kenneth Kennedy commenced this 42 U.S.C. § 1983 action against Defendants, City of Villa Hills, Kentucky and Joseph Schutzman, in his individual and official capacity, alleging various constitutional and state law claims stemming from Plaintiff's arrest and detainment for disorderly conduct on May 18, 2005.

This matter is presently before the Court on Defendants' Motion for Summary Judgment.  (Doc. #21).  The motion has been fully briefed (Docs. #26, 27) and the matter is now ripe for review.  For the reasons set forth herein, because there exist genuine issues of material fact regarding 1) the volume of Kennedy's speech prior to his arrest, and 2) Schutzman's motive for arresting Kennedy, Defendants' Motion for Summary Judgment (Doc. #21) is **GRANTED IN PART** and **DENIED IN PART**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Since the late 1980s, Plaintiff Kenneth Kennedy has resided with his family at 2821 Amsterdam Road in Villa Hills, Kentucky.  At the time he purchased his home, Kennedy believed that the property upon which his home rested was zoned residential. Kennedy subsequently learned, however, that this belief was mistaken – and that his

property was actually zoned for commercial use – when a small strip mall announced its intentions to construct an addition abutting Kennedy's lot.

In an effort to prevent the strip mall from expanding, on January 24, 2005, Kennedy filed a civil action in Kenton County Circuit Court against the company from which he had purchased his home in 1989, the owner of the strip mall, and the City of Villa Hills, Kentucky.   In May 2005, despite the pending lawsuit, Defendant Joseph Schutzman, a building inspector and police officer for the City of Villa Hills, issued a building permit to the strip mall.

In the early morning hours of May 18, 2005, Kennedy watched as bulldozers and construction workers arrived to begin construction on the addition to the strip mall. Believing that the building permit issued to the strip mall was "void or obsolete," Kennedy went to the Villa Hills city building to confront Schutzman.   Arriving at approximately 7:00 a.m., Kennedy barged into Schutzman's office saying "Take your pick, the building is void or obsolete."  In response, Schutzman told Kennedy that they could not discuss the matter due to the pending civil suit, and appeared to leave the city building.

After Schutzman left, Kennedy vented his frustration to three city workers who had congregated in the next room, proclaiming "That son of a bitch broke all of the zoning laws."   Apparently having heard Kennedy's insult, Schutzman ran back into room, got very close to Kennedy, and loudly demanded to know what Kennedy had just said.   Kennedy replied, "You're a fat slob."   Immediately thereafter, Schutzman handcuffed Kennedy, stating "Disorderly conduct; you're under arrest."

Schutzman escorted Kennedy out of the Villa Hills city building and into a police cruiser.  During the drive to the Kenton County Detention Center, Kennedy apologized for insulting Schutzman.  In response, Schutzman stated that he approved of the strip mall's expansion plans.  Upon arriving at the jail, Kennedy was booked and placed into general population.  Kennedy remained at the jail for approximately ten hours before being released on bond.

While a criminal charge of disorderly conduct was pending, Kennedy filed a civil rights complaint in Kenton County Circuit Court against Schutzman and the City of Villa Hills.  That case was removed to this Court on May 30, 2006, and subsequently dismissed without prejudice in light of the ongoing criminal prosecution.  *See Kennedy v. City of Villa Hills, et al.*, No. 2:06-cv-112.

On June 19, 2007, the disorderly conduct charge against Kennedy was dismissed by the state court after Defendants refused to certify to the Kentucky Attorney General the issue of whether a city police detective can be employed as both a police officer and a city building inspector.  Following the conclusion of criminal proceedings, Kennedy filed a new civil rights action on July 6, 2007 in the Kenton County Circuit Court.  But for an update to the procedural history of the case through the addition of paragraph 13, the content of Kennedy's second complaint is identical to his first.  Defendants again removed the case to this Court on August 2, 2007.  (Doc. #1).

In his complaint, Kennedy contends that he was arrested without probable cause, and alleges various state-law torts against both the City of Villa Hills and Schutzman in his individual capacity, including malicious prosecution, intentional infliction of emotional

distress, abuse of process, libel and slander.[1]  Kennedy also alleges that Schutzman violated his clearly established Fourth Amendment right to be free from wrongful arrest, and his First Amendment right to free speech.  Lastly, Kennedy alleges that the City of Villa Hills is liable for the constitutional torts alleged based on its failure to properly train and supervise Schutzman.   Kennedy seeks compensatory and punitive damages, attorney's fees, and costs of suit.

## II.    ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is not a genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the court must view the evidence, and draw all reasonable inferences, in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact."  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce evidence showing that a genuine issue remains, *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record as a whole, a rational fact finder could not find for the

---

[1] In an order dated March 6, 2008, this Court dismissed Kennedy's state-law claims for libel and slander as untimely.  (Doc. #7).

nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

**B.      Section 1983 Claims Against the City of Villa Hills**

Kennedy alleges that the City of Villa Hills violated his constitutional rights by failing to "properly hire, train, and supervise it's [sic] police officers to prevent unlawful harassment & false arrest and imprisonment . . . ." (Doc. #1, ex. A at 4). Despite these assertions, Kennedy's section 1983 claims against the City of Villa Hills cannot be maintained because he has failed to establish a genuine issue of material fact as to whether the City was deliberately indifferent to his constitutional rights in hiring, training, and supervising Schutzman.[2]

"The Supreme Court has long held that municipal governments may only be sued under § 1983 for unconstitutional or illegal municipal policies, and not for unconstitutional conduct of their employees." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 819 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Additionally, "where the established policies of the municipality do not violate the constitution directly, municipalities may incur § 1983 liability where . . . a constitutional policy is applied in an unconstitutional manner." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).

The Supreme Court has placed a heavy burden on plaintiffs seeking to impose municipal liability as a result of a hiring decision or the failure to properly train and

---

[2] Additionally, Kennedy asserts several claims against Schutzman in his official capacity as a police officer and building inspector for the City of Villa Hills. These claims are treated as claims against the City of Villa Hills. *Myers v. Potter*, 422 F.3d 347, 357 (6th Cir. 2005). Because Kennedy cannot establish that the City of Villa Hills is subject to section 1983 liability based upon its hiring, training, and supervision of Schutzman, he is consequently unable to maintain any claim against Schutzman in his official capacity. Accordingly, Defendants' motion for summary judgment in favor of Schutzman regarding all section 1983 claims asserted against him in his official capacity is granted.

supervise its employees.  In order to prevail, a plaintiff must establish that the hiring decision or lack of training or supervision reflects "deliberate indifference" on behalf of the municipality toward the constitutional rights of its inhabitants.  *Bd. of County Comm'rs of Bryan County, OK v. Brown*, 520 U.S. 397, 411 (1997) ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional right will follow the [hiring] decision."); *City of Canton*, 489 U.S. at 387 (A plaintiff must show "the failure to train amounts to deliberate indifference to [the] rights of persons with whom the police come into contact.").  In essence, for a municipality to be held liable for a hiring decision or its failure to train or supervise an employee, a showing of "simple or even heightened negligence will not suffice," rather, a plaintiff must demonstrate that the municipality exhibited deliberate indifference to the "known and obvious consequences" of its actions.  *Brown*, 520 U.S. at 407; *see also Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006).

Defendants contend that the City of Villa Hills is entitled to summary judgment on these claims because Kennedy has not set forth any facts which establish that the City failed to adequately screen Schutzman's background before hiring him, had a custom of not supervising its employees, or failed to adequately train Schutzman to handle verbal abuse from citizens.  In response, Kennedy maintains that "[t]he personnel policies of the city in allowing a housing inspector to incompatibly serve as a police officer loudly bespeak deliberate indifference."  (Doc. #26 at 28).

Kennedy's bald assertions of municipal liability are insufficient to support his claims against the City of Villa Hills.  Although Kennedy has identified the municipal policy – allowing Schutzman to be employed by the City of Villa Hills as both a police

6

officer and a building inspector – which he believes led to his unlawful arrest, he has failed to put forth facts which establish a causal link between that policy and his particular injury.  Kennedy has neither shown, nor even alleged, that Schutzman had a history of illegal or retaliatory arrests, or that the City actually knew that its policy of allowing a police officer to serve as a building inspector would lead to the violation of its citizens' constitutional rights.  Viewing the facts in the light most favorable to Kennedy, the most that can be said is that the City of Villa Hills may have negligently adopted a policy that posed a risk to its citizens' First and Fourth Amendment rights in certain situations.  *See Ctr. for Bio-Ethical Reform, Inc.*, 477 U.S. at 819.  Such municipal negligence, however, does not demonstrate that the City of Villa Hills acted with "deliberate indifference" to the constitutional rights of its citizens when it allowed Schutzman to simultaneously serve in two capacities.  *Id.*

Kennedy's generalized assertions of municipal liability "amount to nothing more than an attempt to hold the municipality liable under *respondeat superior*, a move unsupported by clearly established precedent of the Supreme Court."  *Id.*  Accordingly, all of Kennedy's constitutional claims against the City of Villa Hills fail as a matter of law, and summary judgment in favor of the City on Kennedy's section 1983 claims is granted.

### C.    Section 1983 Claims Against Schutzman in his Individual Capacity

Kennedy's complaint alleges two constitutional claims under section 1983 against Schutzman in his individual capacity: 1) that he was arrested without probable cause in violation of his Fourth Amendment right to freedom from wrongful arrest, and 2) that he was arrested in retaliation for exercising his First Amendment right to free speech.  For

Kennedy's claims to survive, however, he must not only demonstrate that a constitutional violation occurred, but also that Schutzman is not entitled to qualified immunity. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008).

### 1.    Qualified Immunity

"Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Carter v. Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Sixth Circuit Court of Appeals has put forth a three-part test for determining whether a police officer is entitled to qualified immunity from claims asserted against him in his individual capacity.  *See Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008). This Court must "determine (1) whether a constitutional right was violated; (2) whether that right was clearly established and one of which a reasonable person would have known; and (3) whether the official's action was objectively unreasonable under the circumstances." *Id.* (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)).

"In other words, an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  Kennedy bears the burden of demonstrating that qualified immunity does not apply.  *Slusher*, 540 F.3d at 453.

## 2.    Wrongful Arrest

Kennedy's Fourth Amendment claim against Schutzman hinges upon the legality of his arrest for disorderly conduct.  "A person who has been the victim of an unlawful arrest or wrongful seizure under the color of law has a claim based on the Fourth Amendment guarantee that government officials may not subject citizens to searches or seizures without proper authorization."  *Brooks v. Rothe*, Nos. 08-1099, 08-1195, 2009 WL 2568189, at *5 (6th Cir. Aug. 21, 2009).  However, an arrest is constitutional if it is based upon probable cause.  *Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment."); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.").  Thus, for Kennedy's wrongful arrest claim to succeed, he must "prove that the police lacked probable cause."  *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).

In order to determine whether an arrest was supported by probable cause, this Court must determine "whether, at the time of the arrest, the 'facts and circumstances within [the arresting officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense."  *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  To do so requires this Court to examine the events leading up to the arrest and then to decide "whether these historical facts, viewed from the standpoint of an objectively

reasonable police officer, amounted to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). Kennedy was arrested for disorderly conduct, which is defined by Kentucky Revised Statutes section 525.060:

> (1) A person is guilty of disorderly conduct in the second degree when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he:
>
> > (a) Engages in fighting or in violent, tumultuous, or threatening behavior;
> >
> > (b) Makes unreasonable noise;
> >
> > (c) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency; or
> >
> > (d) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.
>
> (2) Disorderly conduct in the second degree is a Class B misdemeanor.

Ky. Rev. Stat. § 525.060. Under Kentucky law, the "[c]ontent, volume, and surrounding circumstances may be considered together in determining what is unreasonable noise." *Commonwealth v. Jones*, 880 S.W.2d 544, 546 (Ky. 1994). The Commentary to the disorderly conduct statute clarifies that it does not apply simply because a private citizen argues with police: "Under the provision, the actor must either intend to cause public inconvenience, annoyance or alarm or wantonly create a risk thereof. The statute is not a strict liability offense. KRS 525.060 requires 'public' alarm. Public is defined in K.R.S. § 525.010(2) as that which affects or is likely to affect a substantial group of persons."

10

*See Maiden v. Hawkins*, No. 06-02, 2007 WL 2900458, at *7 (E.D. Ky. Oct. 3, 2007) ("For example, a person may not be arrested for disorderly conduct as a result of activity which annoys only the police.").

Schutzman contends he had probable cause to arrest Kennedy for disorderly because it was reasonable for him to conclude that, by insulting Schutzman, Kennedy had made "unreasonable noise" in violation of Kentucky law.   Specifically, he argues that it is undisputed that Kennedy used a raised voice to insult Schutzman, and that Kennedy's comment that Schutzman "broke all the zoning laws" was uttered so loudly that Schutzman was able to hear the insult from the parking lot of the Villa Hills city building.

The facts in the record, however, are not so clear-cut, and do not conclusively establish the volume at which Kennedy insulted Schutzman.   The facts come from only two sources: Kennedy's deposition (Doc. #22) and Schutzman's "Uniform Citation" (Doc. #21, ex. 1).   However, neither of these documents contain sufficient factual specificity to allow this Court to ascertain the loudness of Kennedy's speech.

Although Defendants assert that Kennedy admitted during his deposition to loudly "yelling" insults, that contention is an exaggeration.   When asked by defense counsel to give his account of his interaction with the city workers following Schutzman's exit from the Villa Hills city building, Kennedy stated: "I *said*, 'that son of a bitch broke all of the zoning laws.'"  (Doc. #22; 78:8-16) (emphasis added).   Only when pressed, did Kennedy equivocally agree that his insults to Schutzman were spoken loudly:

> Q.      So you told Buck and the two other employees that Joe, that the son of a bitch just broke all the zoning laws?
>
> A.      Broke all the zoning laws; I said that, yes, sir.
>
> Q.      Did you say that rather loudly?
>
> A.      Probably.
>
> Q.      And when you called him a fat slob, did you yell that?
>
> A.      I probably did.

(Doc. #22, 78:24-79:6, 80:15-20).  This testimony does not indicate the actual volume level of Kennedy's speech, or provide a detailed factual description of Kennedy's actions in the city building which would allow the Court to draw comparisons between the loudness of Kennedy's insults and usual volume of speech within the Villa Hills city building.

Similarly, Schutzman's "Uniform Citation," dated the day of Kennedy's arrest, contains no description of the intensity or loudness of Kennedy's insults.  Indeed, the citation's complete failure to mention anything about the volume of Kennedy's speech calls into question whether Schutzman actually arrested Kennedy for making "unreasonable noise":

> Subject entered city building highly agitated.  He confronted this officer in front of 3 public works employees calling officer son of a bitch.  I told him I could not discuss city issues of civil nature with him.  I left building.  He was still agitated.  Building was not open for business.  I returned when he did not leave.  Upon return he continued verbal abuse in front of public works employees and was arrested.

(Doc. #21, ex. 1).

Under these facts, a reasonable jury could find a constitutional violation for wrongful arrest.  Because the volume of Kennedy's speech has not been established

with any certainty, a genuine issue of material fact remains that – if construed in Kennedy's favor – could lead to the conclusion that Schutzman did not have probable cause to arrest Kennedy for disorderly conduct.  Rather, the jury could conclude that Kennedy was arrested for insulting Schutzman as opposed to making "unreasonable noise."  Consequently, summary judgment on Kennedy's Fourth Amendment wrongful arrest claim is not warranted.

Because there exist unresolved factual issues regarding the volume of Kennedy's insults, the issue of qualified immunity becomes an issue for the jury.[3] "Where the reasonableness of an officer's actions hinge on disputed issues of fact, 'the jury becomes the final arbiter of . . . immunity, since the legal question of immunity is completely dependent on which view of the facts is accepted by the jury.'"  *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989)).  Because the reasonableness of Schutzman's actions depends on whether a jury concludes that Kennedy insults were uttered in a manner constituting "unreasonable noise" under Kentucky law, the issue of immunity cannot currently be determined as a matter of law.

### 3.    First Amendment Retaliation

"[G]overnment officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity."  *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (quoting *Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998)).  In general, to make

---

[3] Because there exists a factual question regarding whether Kennedy's Fourth Amendment right to freedom from wrongful arrest was violated, and "[i]t is clearly established that arrest without probable cause violates the Fourth Amendment," *Klein v. Long,* 275 F.3d 544, 550 (6th Cir. 2001), the qualified immunity analysis collapses into a question of whether Schutzman's actions in arresting Kennedy were "objectively unreasonable."

out a claim of official retaliation for the exercise of First Amendment rights, a plaintiff must show (1) that he was participating in a constitutionally protected activity, *Leonard*, 477 F.3d at 355; (2) that "defendant's action injured him in a way likely to chill a person of ordinary firmness from further participation in that activity," *Ctr. For Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007); and (3) that plaintiff's constitutionally protected activity was a "motivating factor" behind the defendant's actions, *Adair v. Charter County of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006). "A 'motivating factor' is essentially but-for cause – 'without which the action being challenged simply would not have been taken.'" *Leonard*, 477 F.3d at 355 (quoting *Greene v. Barber*, 310 F.3d 889, 893 (6th Cir. 2002)).

Although the Sixth Circuit has stated that "[p]robable cause is clearly relevant to [a plaintiff's] First Amendment retaliation claims," *Leonard*, 477 F.3d at 355, it has yet to decide whether, under *Hartman v. Moore*, 547 U.S. 250 (2006) (holding that probable cause is an element of a malicious prosecution charge brought as a constitutional tort), lack of probable cause is an element which must be pled and proved in every First Amendment claim brought pursuant to section 1983, or whether a lack of probable must only be shown in claims of malicious prosecution.

In *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007), the Sixth Circuit reversed a grant of summary judgment in favor of a defendant accused of arresting the plaintiff in retaliation for the plaintiff's exercise of his First Amendment rights. *Id.* at 363. It did so, however, without deciding whether lack of probable cause was a necessary element of a First Amendment retaliatory arrest claim because the court found the facts of the case demonstrated an absence of probable cause. *Id.* at 355. Therefore, the court held,

regardless of whether or not lack of probable cause was an element necessary to plaintiff's retaliatory arrest claim, the district court's grant of summary judgment in favor of the defendant was inappropriate. *Id.* at 355-56.

Just as in *Leonard*, this Court need not determine whether absence of probable cause is a required element of Kennedy's retaliatory arrest claim. Because there exist unresolved factual issues regarding whether Schutzman had probable cause to believe that Kennedy was making an "unreasonable noise" in violation of Kentucky law, if Kennedy can show that the three elements detailed above are satisfied, the Defendants will not be entitled to summary judgment regardless of whether a lack of probable cause is a required element of a First Amendment retaliatory arrest claim.

Kennedy has satisfied the first two elements of his First Amendment retaliatory arrest claims. Defendants do not dispute that Kennedy's speech was constitutionally protected, and "arrest is particularly suited to chill this conduct," *Leonard*, 477 F.3d at 361 (citing *Bloch v. Ribar*, 156 F.3d 673, 679-80 (6th Cir. 1998) (holding that a combination of embarrassment and humiliation is sufficient to chill speech)); therefore, the success of Kennedy's claim depends on Schutzman's motive for making the arrest.

A reasonable factfinder, viewing the record evidence in the light most favorable to Kennedy, could conclude that he was arrested in retaliation for constitutionally protected behavior. Due to the planned expansion of the strip mall near Kennedy's home, Kennedy and Schutzman had a history of conflict and disagreement; indeed, just prior to Kennedy's arrest, Schutzman refused to speak to Kennedy because Kennedy had a civil suit pending against the City of Villa Hills. This evidence, when viewed in combination with Schutzman's "Uniform Citation," creates a triable issue as to

Schutzman's motive in arresting Kennedy, which could lead a jury to conclude that Schutzman's decision to arrest Kennedy was motivated by their history and by the content – not the volume – of the speech in question.  Therefore, Schutzman is not entitled to summary judgment on Kennedy's First Amendment retaliatory arrest claim.

Just as with Kennedy's Fourth Amendment claim, unresolved factual issues preclude this Court from granting Schutzman qualified immunity.  The right to be free from retaliatory arrest is clearly established. "Since the day the ink dried on the Bill of Rights, '[t]he right of an American citizen to criticize public officials and policies . . . is the central meaning of the First Amendment.'"  *McCurdy v. Montgomery County, Ohio*, 240 F.3da 512, 520 (6th Cir. 2001) (quoting *Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975)); *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997) ("[T]he First Amendment right to criticize public officials is well-established and supported by ample case law.  Furthermore, it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983.").  In light of this clearly-established law, if a jury finds that Schutzman arrested Kennedy in retaliation for his insults, as opposed to his unreasonable noise, that action was objectively unreasonable.  *See Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002) ("[Defendant] should have known that an arrest undertaken at least in part as retaliation for a constitutionally protected insult to the officer's dignity would be impermissible . . . .").  Therefore, Schutzman is not entitled to qualified immunity on Kennedy's First Amendment claim.

**D.      State-law Claims**

Kennedy asserts three state-law claims against the City of Villa Hills and Schutzman: 1) malicious prosecution, 2) abuse of process, and 3) intentional infliction of emotional distress.  Because Kennedy is unable to meet the required elements for these claims, each is dismissed as a matter of law.

**1.      Malicious Prosecution**

Under Kentucky law, "there are six basic elements necessary to the maintenance of an action for malicious prosecution, in response to both criminal prosecutions and civil actions."  *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981).  They are:

> (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff [in the original matter], (3) the termination of such proceedings in [the original] defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.

*Id.*  Because "the tort of malicious prosecution is one that has not been favored in the law," *Prewitt v. Sexton*, 777 S.W.2d 891, 895 (Ky. 1989), "one claiming malicious prosecution must strictly comply with the elements of the tort," *Davidson v. Castner-Knott Dry Goods Co.*, 202 S.W.2d 587, 602 (Ky. Ct. App. 2006).

The third element requires a plaintiff claiming malicious prosecution to prove more than just the termination of the prior proceedings, rather, it must be demonstrated that the termination was "related to the merits of the case and is reflective of the innocence or lack of criminal responsibility of defendant."  *Alcorn v. Gordon*, 762 S.W.2d 809, 812 (Ky. Ct. App. 1988).  Accordingly, the "dismissal of a suit for technical or procedural reasons that do[es] not reflect on the merits of the case is not a favorable

termination of the action." *Davidson*, 202 S.W.2d at 605 (quoting *Alcorn*, 762 S.W.2d at 812).

The Complaint alleges that the charges against Kennedy were dismissed because Defendants "refused to certify to the Attorney General the question of whether or not a city police officer can hold simultaneous employment as a police officer as well as a city building inspector in not only the same but other municipalities as well." (Doc. #1 at 4). Based on this account of the reasons behind the dismissal of charges against Kennedy, the Court concludes that the suit was dropped for procedural reasons, and the dismissal does not reflect that Kennedy prevailed on the merits of the case, namely that Kennedy's behavior on the morning of May 18, 2005 did not constitute "disorderly conduct" as defined by Kentucky law. Consequently, Kennedy is unable to satisfy the third element of his claim for malicious prosecution, and the claim is dismissed as a matter of law. *See Rudd v. Bailey*, No. 08-44-ART, 2009 WL 700703, at *2 (E.D. Ky. Mar. 17, 2009) (granting summary judgment on plaintiff's malicious prosecution claim because defendants submitted evidence that plaintiff did not prevail on the merits in the underlying action).

### 2.    Abuse of Process

Abuse of process is a tort which provides compensation for an injury incurred as a result of "the irregular or wrongful employment of a judicial proceeding." *Stoll Oil Refining Co. v. Pierce*, 337 S.W.2d 263, 266 (Ky. 1960). Although seemingly similar to malicious prosecution, abuse of process differs from malicious prosecution in that "malicious prosecution consists of commencing an action or causing process to issue maliciously or without justification," while abuse of process entails "the employment of

legal process for some other purpose than that which it was intended by the law to effect." *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998).

The essential elements of an action for abuse of process are "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Bonnie Braes Farms Inc. v. Robinson*, 598 S.W.2d 765, 766 (Ky. 1980). To prove the existence of an "ulterior purpose," a plaintiff must do more than demonstrate that the defendant possessed a bad intention when instituting the underlying action; to sustain a claim of abuse of process, a plaintiff is required to show that the defendant "attempted to use the [prior] proceeding as a means to secure a collateral advantage." *Cromer v. Montgomery*, No. 2007-CA-002389-MR, 2009 WL 484999, at *6 (Ky. Ct. App. Feb. 27, 2009); *Mullins v. Richardson*, 705 S.W.2d 951, 952 (Ky. Ct. App. 1986) ("Although appellees may have had an ulterior purpose in securing the indictments against appellant, the record contains no evidence that appellees attempted to use the indictments outside the criminal proceeding.").

There is no evidence in the record, and Kennedy does not even allege, that Defendants attempted to use the underlying criminal proceeding for a purpose other than to seek a criminal conviction of Kennedy for disorderly conduct. The absence of an "ulterior purpose" is fatal to Kennedy's abuse of process claim. *See Mullins v. Gooch*, No. 2005-CA-002480-MR, 2006 WL 3759463, at *5 (Ky. Ct. App. 2007) (dismissing an abuse of process claim due to an absence of evidence that defendant attempted to use the criminal proceeding for an ulterior purpose). Because Kennedy has failed to satisfy the first essential element of his claim, his abuse of process claim is dismissed as a matter of law.

### 3.      Intentional Infliction of Emotional Distress

In order to succeed on a claim of intentional infliction of emotional distress or "outrage" under Kentucky law, a plaintiff must prove: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe.  *Kroger Co. v. Wilgruber*, 920 S.W.2d 61, 65 (Ky. 1996) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)).

Kennedy's claim of intentional infliction of emotional distress fails because the record contains no evidence that Kennedy suffered severe emotional distress as a result of his arrest.  During his deposition, Kennedy was asked whether he suffered any emotional injury or mental anguish due to Schutzman's actions.  He responded, "Well, it tarnished my good name . . . [because] everybody and their brother knows about me being arrested."  (Doc. #22; 93:19 - 94:6).  Kennedy's "injury," however, cannot be considered "severe" under Kentucky law.  *Cf. Burgess v. Taylor*, 44 S.W.3d 806, 811 (Ky. Ct. App. 2001) (holding that panic attacks, depression uncured by medication or therapy, and thoughts of suicide requiring medical care constituted severe emotional distress); *Wilgruber*, 920 S.W.2d at 66 (holding that plaintiff satisfied the fourth element of his outrage claim by demonstrating that defendant's actions caused him to suffer "real and disabling depression").  Accordingly, because Kennedy has failed to submit any evidence that he has suffered severe emotional distress as a result of Schutzman's actions, his claim of intentional infliction of emotional distress is dismissed as a matter of law.

### III.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

1.    Defendants' Motion for Summary Judgement (Doc. #21) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

     a.    Summary judgment is hereby **GRANTED** in favor of Defendants on Plaintiff's section 1983 claims against the City of Villa Hills;

     b.    Summary judgment is hereby **GRANTED** in favor of Defendants on Plaintiff's state-law claims of malicious prosecution, abuse of process, and intentional infliction of emotional distress;

     c.    Summary judgment is hereby **DENIED** on Plaintiff's section 1983 claims against Defendant Schutzman in his individual capacity;

2.    This matter is hereby set for a status conference on **Thursday, October 22, 2009 at 9:30 a.m.**

This 23rd day of September, 2009.



Signed By:

_David L. Bunning_

**United States District Judge**

G:\DATA\Opinions\2-07-122-MSJ.wpd